## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DAVID W. BURKMAN,
    *Plaintiff,*

    v.                          No. 3:23-cv-506 (JAM)

BUREAU OF PRISONS *et al.*,
    *Defendants.*

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' MOTION TO DISMISS
### AND DENYING PLAINTIFF'S MOTION TO FILE A SUPPLEMENTAL COMPLAINT

Plaintiff David Burkman is a prisoner in the custody of the Bureau of Prisons ("BOP") at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"). Burkman has filed a *pro se* complaint alleging that the BOP and several BOP officials violated his rights under the Religious Freedom Restoration Act ("RFRA"), as well as his federal constitutional rights to the free exercise of religion under the First Amendment and to equal protection under the Fifth Amendment. Burkman has also moved for leave to file a supplemental complaint.

The defendants have moved to dismiss the complaint and to deny the motion for leave to file a supplemental complaint. For the reasons set forth below, I will grant in part and deny in part the defendants' motion to dismiss, and I will deny Burkman's motion to file a supplemental complaint.

### BACKGROUND

Burkman filed his initial complaint in the U.S. District Court for the District of Columbia in December 2021 before the case was transferred to the District of Connecticut.[1] After the case was transferred and after the defendants filed a motion to dismiss the complaint, Burkman moved for leave to file an amended complaint in order "[t]o correct the grounds defendants

---

[1] Docs. #1, #15.

allege in defendant's motion to dismiss."[2] Burkman promised that his amended complaint would "resolve all of the Rule 8 and Rule 12(b)(6) defects as well as helping to make the complaint easier to follow and reference for all parties."[3]

On August 31, 2023, I granted Burkman's motion for leave to file an amended complaint.[4] The amended complaint names the BOP as a defendant as well as several BOP officials including BOP Director Michael Carvajal, Regional Chaplaincy Administrator Jane Doe, National Inmate Appeals Administrator Ian Connors, Acting Regional Director Sean Marler, Regional Administrative Remedy Coordinator John Doe, FCI Danbury's Associate Warden Patricia Comstock, and BOP Chief Dietician Commander Mitchel Holliday.[5]

The Federal Rules of Civil Procedure require that a complaint be a "short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Unfortunately, Burkman's amended complaint is anything but a short and plain statement as the rules require. Instead, the amended complaint runs 82 pages long including 334 paragraphs of allegations concerning years of events from 2016 to 2021. Rather than laying out just the basic facts that are necessary to show an entitlement to relief, Burkman has drafted his complaint more in the form of a chronological log or diary to granularly and duplicatively detail his many interactions with federal prison officials amidst a jumble of claims about how Burkman believes that his rights were violated.

Below is a basic summary of Burkman's claims insofar as they are necessary to a decision on the defendants' motion to dismiss. Burkman is an adherent of Gaudiya Vaishnavism,

---

[2] Doc. #31 at 2 (¶ 3).
[3] Doc. #37-1 at 10.
[4] Doc. #38.
[5] Doc. #39 at 2-4.

a Hindu religion.[6] The amended complaint alleges numerous ways in which Burkman believes that one or more the defendants have impeded the practice of his religion.

### *Dietary accommodation*

Burkman claims that after initially receiving lacto-vegetarian meals, in accordance with his faith, his dietary accommodations were revoked in February 2016.[7] He alleges that the alternative diet programs offered to him did not adequately meet his religious dietary needs, so he was forced to supplement his meals at the commissary.[8]

Burkman continued to pursue dietary accommodations through formal and informal processes with varying success.[9] He alleges discrimination after being told that "[the Certified Religious Diet] (CRD) is only for inmates of the Jewish and Muslim faiths" and that he should "self-select from mainline."[10] But then in April 2017 Burkman was assigned to the CRD component of the Alternative Diet Program.[11] While Burkman at various times objected to the content of the CRD meals, Burkman's amended complaint states that as of 2020 he was provided meals that met his faith's dietary requirements.[12]

### *Removal of food to living unit*

---

[6] *Id.* at 15 (¶ 76).

[7] *Id.* at 15 (¶ 76), 4 (¶ 18).

[8] *Id.* at 5 (¶ 21) ("[N]either of the two components of the Alternative Diet Program meets plaintiff's religious dietary restrictions."). *See also id.* at 8 (¶ 42) ("No flesh option still does not meet my religious requirements. Nor does the self-select nor certified options."); *Id.* at 11 (¶ 56) ("Defendant Connors responds stating, 'BOP alternative religious diet provides a no-flesh option, as part of the mainline self-select process to address vegetarian needs. Inmates can supplement their diets by purchasing vegetarian meals in the institution's commissary,' and that, 'Self-selecting the no flesh items from mainline is the best accommodation available to meet your stated needs.'").

[9] *Id.* at 12-21.

[10] *Id.* at 19 (¶ 101).

[11] *Id.* at 13 (¶ 66).

[12] *Id.* at 33 (¶ 167) ("On December 3, 2020, at 3:32 p.m., plaintiff sent an Electronic Request to Staff addressed to Chaplaincy Services stating, 'The lunch meal was correct and hopefully it is resolved. Thank you for your efforts in the matter.'").

Burkman also alleges that in June 2017 the prison began forbidding him from taking his food from the prison dining facility.[13] According to Burkman, his "sincerely held religious tenets require [him] to first pray over the food at [his] altar before consuming the food and therefore it is necessary for [him] to take food to his living unit."[14] His requests for accommodation were allegedly met with resistance, and his eligibility for taking food out of the dining facility has been in constant flux.[15] The amended complaint alleges that "the Muslim and Jewish communities . . . were allowed to take out their meals . . . from the chow hall" while Burkman and his faith group were forbidden from doing so.[16]

### Recognition of holy and fast days

Burkman alleges that both FCI Danbury and the BOP have refused to recognize certain holy and fast days of his faith group. According to Burkman, the BOP recognizes only two holy days and no fasting days for inmates of Hindu faith.[17] He made formal requests at the institutional level and, when met with rejection, pursued the proper appeals processes at the national level to receive recognition so that he could "take work proscription days . . . without penalty" in accordance with his religious beliefs.[18] Burkman alleges that BOP policy accommodates "Jewish, Catholic, and Christian Holy Days" to a greater extent than his faith's holy days.[19]

### Placement of religious items on top of personal locker

---

[13] *Id.* at 21 (¶ 112).

[14] *Ibid.*

[15] *Id.* at 21-37.

[16] *Id.* at 26 (¶ 134). *See also id.* at 25 (¶ 131) ("Mr. Connors tells the plaintiff that Mr. Connors will update the memorandum forbidding all inmates to take out their meals from the chow hall to exclude plaintiff's faith group only as that new memorandum was not meant for the plaintiff's faith group but instead for the other faith groups . . . .").

[17] *Id.* at 40 (¶ 187).

[18] *Id.* at 73 (¶ 311).

[19] *Id.* at 38 (¶ 183) ("[P]laintiff is asking for a total of 41 days versus 58-64 days for the occidental faiths.").

Burkman alleges a new prison warden imposed a new policy in early 2019 that prohibited inmates from placing items on top of their personal lockers during the day.[20] As a result of this policy, Burkman was prohibited from placing his small altar, with which he prays during the day, on top of his locker.[21] Seeking a religious exemption to this policy, he lodged formal requests and appeals to no avail.[22]

### *Restriction of access to religious beads and tilak clay*

Burkman claims that the prison restricted his access to certain religious items. In January 2021, Burkman requested to purchase religious beads and tilak clay for his personal religious practice.[23] He states that his request for tilak clay—the use of which is a central tenet of his faith—was denied.[24] While his request for religious beads was approved, he alleges that prison officials were dilatory in responding to his special purchase order for both items.[25] Burkman pursued informal processes to remedy the delay.[26]

The amended complaint alleges that the defendants violated Burkman's constitutional rights to free exercise of his religion under the First Amendment as well as his right to Equal Protection under the Fifth and Fourteenth Amendments. It also alleges a statutory violation of the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq.* The complaint does not seek an award of damages but seeks declaratory and injunctive relief.[27]

---

[20] *Id.* at 42 (¶ 194).
[21] *Ibid.* (¶ 195).
[22] *Id.* at 45-48.
[23] *Id.* at 48 (¶¶ 215-17).
[24] *Ibid.* (¶ 217).
[25] *Id.* at 53-56 (¶¶ 230-250).
[26] *Ibid.*
[27] *Id.* at 79-81.

The defendants have moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.[28] Burkman has not filed any objection or other response to the defendants' motion to dismiss.[29]

## DISCUSSION

The standard that governs a motion to dismiss under Rule 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, offer plausible grounds for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024).[30]

The Court must read the allegations of a *pro se* complaint liberally to raise the strongest arguments that they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Still, notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See ibid.*

When the defendants filed their motion to dismiss, they served on Burkman the notice that the Court's local rules require for *pro se* litigants to advise Burkman of his obligation to file an objection or response.[31] But, as noted above, Burkman has not filed any objection or other response to the motion to dismiss. The Court's local rules provide that "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion." D. Conn. L. Civ. R. 7(a)(2). So the fact that Burkman has failed to object to the motion to dismiss does not mean that

---

[28] Doc. #41.
[29] When the defendants moved to dismiss Burkman's initial complaint prior to the Court's granting leave for Burkman to file an amended complaint, Burkman filed an objection to the prior motion to dismiss. Doc. #37.
[30] Unless otherwise noted and for ease of reading, this ruling omits all internal quotations, brackets, and derivative citations from quotations of cases cited in the ruling.
[31] Doc. #41-4 (Local Rule 12(a) notice).

I should automatically grant the motion. It means simply that I must evaluate the validity of the defendants' arguments for dismissal in light of the allegations of the amended complaint.

### RFRA

The Religious Freedom Restoration Act prohibits the government from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability" unless "application of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)-(b). "To establish a *prima facie* RFRA violation, the plaintiffs must demonstrate that they sought to engage in the exercise of religion and that the defendant-officials substantially burdened that exercise." *Sabir v. Williams*, 52 F.4th 51, 59 (2d Cir. 2022).

"The government then faces an 'exceptionally demanding' burden to show 'that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting parties.'" *Ibid.* (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014)). At the initial pleadings stage of a motion to dismiss, a court is not free to hypothesize reasons that may justify the government's challenged action. Instead, a court's consideration of such reasons is "limited to any interests and evidence of narrow tailoring contained in the allegations of the complaint." *Id.* at 61.

### First Amendment free exercise of religion

The First Amendment states in relevant part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. "Inmates clearly retain protections afforded by the First Amendment, including its directive that

no law shall prohibit the free exercise of religion." *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987).

But, as the Second Circuit has recently observed, "[i]n the prison context … the right to free exercise of religion is balanced against the interests of prison officials charged with complex duties arising from administration of the penal system," and therefore "an infringement of the free exercise of religion is permissible only if it is reasonably related to legitimate penological interests." *Kravitz v. Purcell*, 87 F.4th 111, 127-28 (2d Cir. 2023).

In contrast to a RFRA claim, a First Amendment free-exercise claims requires only proof of some burden—not necessarily a substantial burden—on the exercise of religion. *Id.* at 127. Thus, "to assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives." *Id.* at 128.

### *Fifth Amendment equal protection*

"The Fifth Amendment includes an explicit Due Process Clause and an implicit equal protection guarantee that is 'precisely the same as ... equal protection claims under the Fourteenth Amendment.'" *United States v. Amalfi*, 47 F.4th 114, 123 (2d Cir. 2022) (quoting *Sessions v. Morales-Santana*, 582 U.S. 47, 52 n.1 (2017)).[32] As the Supreme Court has recognized, "most laws differentiate in some fashion between classes of persons," and "[t]he Equal Protection Clause does not forbid classifications," but "simply keeps governmental

---

[32] The Fourteenth Amendment includes an explicit guarantee of equal protection of the laws as enforceable against the States and local governments. Because all of the defendants in this action are federal government actors, there is no need to consider the Fourteenth Amendment here.

decisionmakers from treating differently persons who are in all relevant respects alike."
*Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Equal protection cases generally fall into one of two categories. If the difference in treatment targets a suspect class (such as a class of persons based on race, gender, or religion) or targets the exercise of a fundamental right (such as the right to vote or the right to engage in the free exercise of religion), then a court will subject the government's distinction in treatment to heightened, intermediate, or strict scrutiny. All other governmental classifications need only be supported by a rational basis in order to survive a challenge under the Equal Protection Clause. *See We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.*, 76 F.4th 130, 158 (2d Cir. 2023); *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018).

### *Statute of limitations for RFRA claims for failure to accommodate religious diet*

The defendants argue that the statute of limitations bars Burkman's RFRA claim insofar as it arises from the failure to accommodate Burkman's request for a diet consistent with his religion.[33] A RFRA claim is subject to the four-year statute of limitations that generally governs causes of actions brought under federal statutes enacted after 1990. *See* 28 U.S.C. § 1658(a); *Zirpolo v. Williams*, 2020 WL 3104078, at *4 (D. Colo. June 2020), *aff'd,* 2022 WL 2118440 (10th Cir. June 13, 2022); *Al-Sadun v. DCFS*, 2011 WL 1378638, at *3 (N.D. Ill. 2011). The defendants argue that Burkman's complaint about the failure to accommodate his religious diet is time-barred because the alleged failure to accommodate took place at the latest in September 2016 when Burkman's administrative appeal was denied but Burkman did not file this action until December 2021.

---

[33] Doc. #41-1 at 12-13.

I agree with the defendants. The amended complaint does not plausibly allege a denial of an accommodation with respect to Burkman's dietary requests that took place within four years of Burkman's filing of this action in December 2021.

To be sure, the complaint alleges additional diet-related interactions between Burkman and prison officials that took place from March 2020 to January 2021.[34] But these factual allegations do not plausibly establish a failure to accommodate, and in fact these allegations culminate with Burkman writing to one of the chaplains stating: "Thank you for your quick response and efforts in this matter. Both the lunch and dinner meals tonight were correct and so hopefully the issue is rectified for the time being. Thank you."[35] Accordingly, as to Burkman's failure-to-accommodate-diet RFRA claim, I will grant the defendants' motion to dismiss on the ground that it is barred by RFRA's four-year statute of limitations.[36]

### Failure to recognize additional holy and fast days

The defendants argue that Burkman has not alleged plausible grounds for relief with respect to his claim that they failed to recognize holy and fast days. Specifically, the defendants argue that Burkman concedes that "[t]he BOP currently recognizes two Holy Days a year and no fast days for inmates of the 'Hindu' faiths," and that the failure to recognize 39 additional days as requested by Burkman does not "establish a substantial burden on Plaintiff's ability to engage in sincere religious exercise or the absence of a compelling government interest."[37]

According to the complaint, a failure to recognize Holy Days means that prisoners like Burkman are not free on such days from prison requirements for work and school.[38] Although the

---

[34] Doc. #39 at 30-34 (¶¶ 154-173).
[35] *Id.* at 34 (¶ 173).
[36] Because the defendants raise no similar statute of limitations argument with respect to Burkman's constitutional claims, there is no cause at this time for me to consider whether any of Burkman's constitutional claims are similarly barred by the statute of limitations.
[37] Doc. #41-1 at 14, 15.
[38] Doc. #39 at 69-70 (¶ 300) (citing BOP Program Statement 5360.09(16)).

complaint lacks further allegations to suggest that Burkman himself has had to engage in work or school activities on days that are holy days for his religion, it is a fair inference for initial pleading purposes that he is actually burdened in violation of both RFRA and the First Amendment by the defendants' failure to recognize more than two holy days and any fast days at all for his religion.

Similarly, for purposes of Burkman's equal protection claim, he alleges that the defendants recognize a "similar or greater" number of holy and fast days for other religions.[39] Because a government's discrimination between two different religions is subject to heightened scrutiny, Burkman's allegations that the defendants treat his religion less favorably than other religions is enough for initial pleading purposes to support his equal protection claim.

To be sure, the defendants may have compelling or other reasons for declining to recognize more religious holy days or fast days for Burkman. But these reasons do not appear on the face of the amended complaint, and it would be premature for me at the initial pleading stage to decide that such reasons overcome Burkman's RFRA and constitutional claims.

In short, the complaint alleges plausible grounds for Burkman's RFRA and constitutional claims with respect to the denial of recognition of more holy and fast days. Accordingly, I will deny the defendants' motion to dismiss Burkman's claims insofar as they are based on the denial of recognition more holy and fast days.

### Altar on locker

The defendants argue that Burkman has not alleged a plausible RFRA claim with respect to his complaint against the policy that prevents him from placing an altar or other religious items on his locker.[40] First, they point out that the policy is one of general application to "all

---

[39] *Id.* at 68-69 (¶ 296).
[40] Doc. #41-1 at 15-16.

personal items, religious or other."[41] But this argument ignores that there is no "law of general applicability" defense against a RFRA claim. *See Tanzin v. Tanvir*, 592 U.S. 43, 45 (2020) (explaining how RFRA was enacted to counteract the Supreme Court's holding that "the First Amendment tolerates neutral, generally applicable laws that burden or prohibit religious acts even when the laws are unsupported by a narrowly tailored, compelling governmental interest").

The defendants further argue that Burkman has not alleged facts to suggest that the policy constituted a substantial burden on Burkman's free exercise of his religion. According to the defendants, the complaint alleges only that the policy prevented Burkman from the hours of 7:30am to 3:30pm from keeping a few photographs and a saffron colored cloth on his locker in an area less than two-by-two feet in dimension.[42] But even if the size of the altar is small and its components unconventional, I do not have adequate grounds at the pleading stage to second-guess Burkman's avowal that he used the altar for religious purposes and that a prison chaplain found Burkman "sincere in the matter of the altar" and issued Burkman "a permit to have a personal altar set up on [his] personal locker."[43]

Nor does the fact that the policy applies for only part of the day from 7:30am to 3:30pm necessarily negate the existence of a substantial burden. The defendants, for example, cite no authority to suggest that if the government prevents someone from praying or attending church only for a few hours of the day rather than for the entire day, then the government has imposed no substantial burden on the exercise of religion.

The defendants also argue that a different part of the complaint alleges that Burkman in fact maintained the altar in his cell area during mid-day hours.[44] But the cited paragraphs of the

---

[41] *Id.* at 15.
[42] *Ibid.* (citing ¶ 198 of the amended complaint).
[43] Doc. #39 at 42-43 (¶ 196).
[44] Doc. #41-1 at 16 (citing ¶¶ 179-180 of the amended complaint).

amended complaint are cryptic and do not state that Burkman continued to maintain the altar on

his locker. These additional allegations do not conclusively contradict Burkman's claim of a

substantial burden from enforcement of the locker policy.

In short, the complaint alleges plausible grounds for Burkman's RFRA claim with respect

to the policy preventing him from placing his altar on top of his personal locker. Accordingly, I

will deny the defendants' motion to dismiss Burkman's RFRA claim as to the locker policy.[45]

### *Purchase of beads and clay*

The defendants argue that Burkman failed to administratively exhaust his claims with

respect to being prevented from buying tikal clay and the delay with respect to the purchase of

beads.[46] The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be

brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion

requirement applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other

wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The exhaustion requirement thus applies to

---

[45] The defendants' motion to dismiss with respect to the locker policy references only the RFRA claim: "Read together, Plaintiff's allegations with respect to the 2019 daytime storage policy do not state a plausible RFRA claim." *Ibid.* Therefore, I have no cause at this time to evaluate the validity of Burkman's constitutional challenges to the locker policy.

[46] Doc. #41-1 at 16. The defendants' briefing otherwise refers to exhaustion requirements in general terms and the defendants have also included an affidavit from a BOP administrator along with underlying BOP records of his administrative complaints. Docs. #41-2, #41-3. But because the defendants' memorandum of law does not explain how Burkman has failed to properly exhaust any of his claims other than with respect to his purchase of beads and tikal clay, I decline to consider at this time whether any of Burkman's other claims were not properly exhausted. If the defendants have good faith grounds to believe that Burkman has not properly exhausted other aspects of his claims, they should properly and specifically present these arguments in their briefing.

claims under the First Amendment and RFRA. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).

The PLRA requires "proper exhaustion." *Id.* at 238. "That is, 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Ibid.* (quoting *Jones v. Block*, 549 U.S. 199, 218 (2007)). "Prisoners 'cannot satisfy the PLRA's exhaustion requirement solely by making informal complaints to prison officials.'" *Quint v. Martin*, 2023 WL 5293533, at *2 (D. Conn. 2023) (quoting *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007)).

The Second Circuit has described the multi-step grievance process available to federal prisoners:

> BOP's procedural rules create a four-step administrative grievance system for prisoner complaints. The first step requires inmates to present an issue of concern informally to the prison staff so that they could attempt to resolve it. If the issue remains unresolved, the inmate can submit a formal written Administrative Remedy Request to the institution staff member designated to receive such requests. The inmate can appeal any adverse decision made at that stage to the Regional Director, and then to the BOP's General Counsel.

*Johnson*, 680 F.3d at 238 (citing *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009)).

The complaint alleges that Burkman's request for tilak clay was denied.[47] But it does not allege that Burkman took any further procedural steps to procure the tilak clay following this denial, even after being advised to file a New and Unfamiliar Religious Components Questionnaire form.[48] Similarly, the complaint alleges only that Burkman pursued informal processes to remedy the delay for the purchase of religious beads.[49] He filed an Informal Resolution form and asked prison officials when he would receive a response.[50]

---

[47] *Id.* at 48 (¶ 217).
[48] *Id.* at 49-50 (¶¶ 221-22).
[49] *Id.* at 53-56 (¶¶ 230-250).
[50] *Ibid.*

In short, it appears that Burkman did not fully exhaust his administrative remedies with respect to his complaints concerning the purchase of tilak clay and religious beads. Indeed, Burkman has failed to file any objection or response to the defendants' motion to dismiss on exhaustion grounds. Accordingly, I will grant the defendants' motion to dismiss Burkman's challenges concerning the purchase of tilak clay and religious beads.

### Unaddressed claims

The defendants seek to "dismiss the Amended Complaint in its entirety with prejudice."[51] But the problem with this is that defendants themselves fail to address all of Burkman's claims. They do not, for example, address Burkman's claims that his rights were violated when he could not remove food from the dining facility. Nor do they address any of Burkman's constitutional claims as distinct from his RFRA claim.[52] Therefore, despite the fact that the defendants seek dismissal of the complaint in its entirety, there are no grounds to do so because the defendants have failed in their briefing to address the full scope of Burkman's claims.

### Motion to supplement complaint

Burkman has moved for leave to file a supplemental complaint.[53] The defendants in turn object to the filing of the proposed supplemental complaint.[54] I will sustain their objection for the multiple reasons set forth below.

Burkman's proposed supplemental complaint would add 93 more pages to the existing 82 pages of the amended complaint and 247 more paragraphs of factual allegations in addition to the existing 334 paragraphs.[55] In contrast to the existing amended complaint which spans the

---

[51] Doc. #41-1 at 21.
[52] The defendants' memorandum of law acknowledges that the amended complaint alleges not only RFRA claims but also constitutional claims under the First Amendment and for denial of equal protection. *Id.* at 6, 8. But the defendants' arguments for dismissal reference only Burkman's claims under RFRA.
[53] Doc. #40.
[54] Doc. #41-1 at 16-21.
[55] Doc. #40-1.

time period from 2016 to 2021, the proposed supplemental complaint spans nearly two more years from August 2021 to July 2023, and it adds five new defendants—J.C. Petrucci, J. Nash, "Mrs. Norcini," Will Rogers, and Sixtus Iwuji—as well as several new legal claims.

Rule 15 of the Federal Rules of Civil Procedure governs the filing of amended and supplemental pleadings. As to an *amended* complaint, the rule instructs that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). As to a *supplemental* complaint, the rule instructs that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after the date of the pleading* to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added).

It is readily apparent that the proposed supplemental complaint is not a proper supplemental complaint. All of the facts it alleges from 2021 to 2023 occurred *before* the date of the filing of the operative amended complaint in August 2023. And Burkman moved for leave to file the supplemental complaint only one week after he filed his amended complaint.

In substance, then, the supplemental filing is an amended complaint. But "[i]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Shannon v. Venettozzi*, 749 F. App'x 10, 13 (2d Cir. 2018) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Therefore, if I were to grant Burkman leave to file his proposed amended (supplemental) complaint, it would supersede the operative complaint and contrary to Burkman's apparent intent.

More generally, a court may deny leave to file an amended complaint if there is "evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice

16

to the opposing party, or futility." *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000). Here, Burkman has failed to show good reason for his delaying until September 2023 to update the allegations that were set forth in the amended complaint for the time period from 2016 to 2021. And if I were to allow Burkman to add five new defendants at this time (and who could have been named as defendants long ago), this would result in prejudicial delay for the existing defendants who have already been the subject of this lawsuit for nearly three years since December 2021.

In addition, as the defendants note, the proposed amended (supplemental) complaint fails to comply with the basic requirement of Rule 8 of the Federal Rules of Civil Procedure for a short and plain statement of the claim. As noted above, this is already an immense problem with the operative amended complaint, and I decline to allow Burkman to compound the problem by filing yet another blunderbuss, near-stream-of-consciousness pleading that would vastly complicate the defendants' ability to file an intelligible response as well as this Court's evaluation of the merits of Burkman's claims. Accordingly, I will deny Burkman's motion for leave to file another amended (supplemental) complaint.

On the other hand, if Burkman believes that his rights were violated with respect to actions that occurred from 2021 to 2023, then he may file a new court action rather than complicating by supplementation this already long-pending action. But if Burkman decides he wishes to file a new court action, he may not simply re-label his proposed amended (supplemental) complaint as a new court complaint. Instead, he must draft and file a pleading that complies with Rule 8's requirement of a short and plain statement of his claims. A plaintiff's right to file a complaint is not an invitation to bludgeon the docket with a tsunami of surplusage that makes its impractical, impossible, or unduly time-consuming for a defendant to formulate a

response or for a judge to sift through the verbal wreckage to divine whether the plaintiff has stated a plausible claim. If Burkman decides he wants to file a new action, he must ensure that any new complaint is carefully drafted to set forth only the facts that are reasonably necessary to establish plausible grounds for relief as to any named defendant.

## CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part the defendants' motion to dismiss (Doc. #41). The Court DENIES plaintiff's motion for leave to file a supplemental complaint (Doc. #40).

It is so ordered.

Dated at New Haven this 10th day of September 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge